# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

vs.                                                                    Civil No. 98-01176 JC/WWD
                                                                       Crim. No. 95-330 JC

ELVIS ROBERT SEDILLO,

       Defendant/Petitioner.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

1.   THIS MATTER comes before the Court following an evidentiary hearing on the merits of Petitioner's Motion Pursuant to 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence. Petitioner was convicted of carjacking resulting in death after entering a guilty plea, and was sentenced to life imprisonment on May 20, 1996. Petitioner now seeks to set aside the plea.

2.   The hearing addressed the following grounds for relief raised by Petitioner in his amended petition:[1]

> (1) Counsel failed to provide the Court with available psychological reports which indicated that Petitioner has diminished mental capacity;
>
> (2) Counsel failed to provide the Court with full and complete information about Petitioner's background including the fact that Petitioner suffered from child abuse and neglect, and that Petitioner had a documented history of mental health and mental retardation problems;

---

[1] "Tr. I" and "Tr. II" refers to portions of the transcripts for October 25, 1999 and October 26, 1999, respectively. Exhibits admitted at the proceeding are referred to herein.

(3) All claims were not presented in this case due to ineffective assistance of counsel.[2]

### *Background*

3.   Sedillo, along with two other defendants, was involved in a cold-blooded carjacking resulting in the death of a fifteen year-old girl, Patricia Tafoya.  Sedillo and his friends were out driving in a car belonging to Louie Garcia, a co-defendant.  Garcia pulled his car along the passenger side of the car Tafoya was driving and asked the passenger in Tafoya's vehicle to pull over so that they could talk.[3]  Sedillo exited his vehicle and walked up to Tafoya's window, directing her to get out of the car.  Sedillo shot Tafoya when she opened the door.  The passenger in the car escaped by exiting the passenger side of the car. Tafoya died at the hospital a day later from internal bleeding.

4.   One of Sedillo's girlfriends told police that Sedillo told her over the phone that he had killed someone, that he was cruising on Central and saw some tire rims he wanted.  Lydia Ayala, girlfriend of co-defendant Angelo DeHerrera, later gave a statement where Sedillo said that shooting Patricia gave him a "rush" and that he would have shot Tafoya's passenger as well, since he didn't want to leave any witnesses, but his gun had jammed.

---

[2]   Petitioner advised the Court through counsel at the hearing that two of the claims  in the amended petitioner had been dropped.

[3]   The facts are based on those set out in the Presentence Report, <u>Pet. Ex. 1</u>.

5.  All defendants entered guilty pleas. Sedillo pleaded guilty to carjacking resulting in death and was sentenced to life imprisonment under the guidelines.  Right before sentencing, however, he moved to withdraw his guilty plea, which the trial court denied.[4]

6.  On March 12, 1998, Sedillo's conviction was affirmed on appeal.  See U.S. v. Sedillo, (Table, text in Westlaw), 1998 WL 109838.  The Court of Appeals for the Tenth Circuit found that Petitioner's plea was properly entered under Fed R. Cr. P. 11(e)(1)(C), and that the sentencing court did not abuse its discretion in denying Petitioner's motion to withdraw his guilty plea.  No other grounds were raised or addressed.[5]

### *Findings and Conclusions*

7.  Under the terms of the Plea Agreement, Petitioner waived his right to challenge his sentence or the way in which it was imposed unless the sentence imposed was above the indicated guideline range.  Petitioner was advised of the waiver and he stated that he understood.  Pet. Ex. 2 at 2-6.  Petitioner also understood that the sentence to be imposed would be from 30 years to life and that he was waiving his right to appeal "anything about the sentence". . . "so long as it's within the guideline range applicable to your conviction, which is 360 months to life."  Pet. Ex. 2 at 8.

---

[4]  The first sentencing proceeding was aborted when, apparently unbeknownst to counsel, Sedillo suddenly decided to notify the sentencing judge, Chief Judge Conway, that he wanted to withdraw his guilty plea.  Judge Conway continued the proceeding to allow briefing on the issue.

[5]  Ineffective assistance of counsel is a matter "properly left to collateral proceedings," thus Petitioner's claims are not procedurally barred by the fact that his claims of ineffective assistance were not raised on direct appeal.  United States v. Glover, 97 F.3d 1345, 1349 (10th Cir. 1996).

8. At the time of the plea, the Court found Petitioner to be fully competent and capable of entering an informed plea. At the plea hearing the sentencing judge found that the plea was knowing and voluntary, and the finding as to voluntariness was reiterated at the time the motion to withdraw the pleas was denied.[6] Pet. Ex. 2 at 15.

**Grounds 1 and 2**

9. Petitioner's first two claims allege failure of counsel to provide the sentencing court with certain information which he characterizes as mitigating evidence and which he feels could have had an effect on reducing Sedillo's sentencing level from a level 43 to a level 40. This information includes available psychological reports indicating that Petitioner has diminished mental capacity; information about Petitioner's background including the fact that Petitioner suffered from child abuse and neglect; and information which allegedly documents Petitioner's history of mental health and mental retardation problems.

10. A petitioner who is challenging his guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel must show that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985) and quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).

---

[6] Claim 3 in the amended petition had alleged that the plea was involuntary, due to Petitioner's alleged "mental retardation considerations." However, at the hearing, counsel for Petitioner advised the Court that Petitioner was not mentally retarded and that he did understand the plea itself. Tr.I at 5.

-4-

11.  Several psychological reports were done over a period of time addressing issues such as Petitioner's amenability to treatment at the juvenile facility, initial assessments, or for the management of Petitioner's probation.  <u>Pet. Exs. 11A-E</u>.  In this case, counsel avoided "wholesale" presentation of these reports to the Court because much of the information in them would not be helpful to Petitioner as mitigating evidence.  <u>Tr. 1 at 78, 10-15</u>.

12.  Counsel generally is given broad latitude to make strategic and tactical choices regarding appropriate action to take or refrain from taking while acting in a representative capacity.  <u>Strickland v. Washington</u>, 466 U.S. at 691.  Further, failure to present mitigating evidence is not per se ineffective assistance of counsel.  Where available mitigating evidence is not presented, a court focuses on the reason for the decision not to present the evidence.  <u>Wallace v. Ward</u>, 191 F.3d 1235 (10th Cir.(Okla.) (citations omitted).

13.  I find counsel's tactics here to be reasonable.  For example, Petitioner stated during the November 29, 1993 report completed by Christine Johnson, Ph.D. that "he values himself for being 'crazy' and 'crazier,' by which he seemed to mean blatantly flaunting his tough or aggressive behavior in defiance of authority, without regard for consequences. . . [g]etting back at someone who has wronged him is of utmost importance to him. . . ." .  <u>Pet. Ex. 11-A at 11</u>.

14.  During the same interview, Sedillo, who was 16 years old and about to turn 17, told Dr. Johnson that "there's a lot of things" he could do to get bound over to adult status and that he would "kill someone to get binded over."  <u>Id. at 12</u>.  Psychologist David Miller, during a March 15, 1993 interview Sedillo, found him "not suffering from any major mental, affective, or cognitive deficits that would preclude his succeeding at the Boys' school."  <u>Pet. Ex. 11-B at 2</u>.

15. To demonstrate that his attorney's performance fell below a reasonable standard, Sedillo must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Based on my review of these reports, Petitioner has not met this burden.

16. Even assuming a deficiency in counsel's performance in failing to bring portions of the reports to the Court's attention other than those included in the allocution statement, see Tr. I at 78, I find that Petitioner cannot show prejudice from such failure, for several reasons. First, pertinent information as to mental and emotional health as well as intellectual deficits were presented in the Presentence Report, and reference is made to two of the evaluations. Pet. Ex. 1, at 12-13.

17. Second, abuse and neglect as a child generally does not have any bearing on sentencing issues. See Foster v. Ward et al., 182 F.3d 1177 (10th Cir. 1999) (evidence of a troubled childhood involving physical, emotional, sexual and/or substance abuse does not outweigh evidence supporting the conviction and evidence supporting multiple aggravating circumstances; nor does evidence of low I.Q. and/or organic brain damage) (citing Nguyen v. Reynolds, 131 F.3d 1340, 1347-49 (10th Cir.1997), cert. denied, --- U.S. ----, 119 S.Ct. 128, (1998)).

18. Third, under U.S.S.G. § 5K2.13, a lower sentence may be warranted to reflect the extent to which a defendant's reduced mental capacity contributes to the commission of the offense. However, the provision does not apply where the defendant committed a violent offense or where his criminal history indicates a need for incarceration to protect the public. The nature

of Sedillo's crime and his violent tendencies acted out even while incarcerated after arrest[7] would have barred Petitioner from benefitting under that provision. Thus, he has not shown prejudice from any alleged deficiency on counsel's part in failing to present these reports to the sentencing Court.

19. At the hearing, counsel for Petitioner raised the issue of defense counsel's obligation to obtain an acceptance of responsibility from Petitioner so that he could be eligible for a two or three-level reduction in his base offense level. The plea agreement states that Sedillo had "demonstrated a recognition and affirmative acceptance of responsibility for his criminal conduct." However, the reduction was contingent on Sedillo providing "an appropriate oral or written statement" for the Presentence Report. <u>Pet. Ex. 1 (plea agreement, ¶7(a))</u>. Sedillo stated at the plea hearing that he understood that he needed to provide this statement in order to obtain the reduction. <u>Pet. Ex. 2 at 7</u>.

20. Generally, when a defendant does not give an acceptance of responsibility statement, the U.S. Probation Office will not give a defendant the acceptance of responsibility reduction. <u>Tr. I at 12; l. 16-22</u>. Had Sedillo provided the U.S. Probation Office with an acceptance of responsibility, the base offense level would have been 40, with a guideline range of 30 years (360 months) to life instead of a level of 43 with a guideline range of only life imprisonment. <u>Pet. Ex. 4 at 28</u>; <u>PSR (Pet. Ex. 1 at 8)</u>.

21. Defense counsel did not provide the U.S. Probation Office with the acceptance of responsibility statement. However, counsel did advise Sedillo to sign an acceptance of responsibility.

---

[7] Both the psychological reports as well as the Presentence Report bear out this finding.

22.     During one of several conversations counsel had with Sedillo after the March 5, 1996 presentence interview, Petitioner indicated he wanted to withdraw his guilty plea.  Counsel visited Petitioner and had several conversations about withdrawing the plea.  On the evening before the initial May 9, 1996 sentencing, Sedillo informed counsel that he was not going to withdraw his plea and would sign a statement accepting responsibility.  Tr. I, at 73-75.  Counsel drafted a statement of acceptance of responsibility for Sedillo to sign.  Tr. I at 75; Pet. Ex. 3 at 3-4.

23.     However, just prior to the sentencing hearing on May 9th, Petitioner told counsel that he had decided not to sign the acceptance of responsibility.  Tr. I, at 75-76.  During the sentencing hearing, Petitioner told Judge Conway that he wanted to withdraw his guilty plea. Pet. Ex. 3 at 4.

24.     Under Strickland, defense counsel is not deficient where Petitioner refused to take his advice.  In this case, Petitioner changed his mind about entering a guilty plea without even letting counsel know beforehand and changed his mind about providing the statement.[8]

25.     Petitioner contends that defense counsel should have presented to the sentencing court correlations between Sedillo's psychological make-up / intellectual deficits, and his failure to finally sign an acceptance of responsibility and attempt to withdraw his plea.  Even assuming a constitutional deficiency on the part of defense counsel's performance for this claim, Petitioner cannot make a sufficient showing of prejudice as a result of the deficiency.  Mr. Jose Cordova, supervising officer at the U.S. Probation Office, testified that, based on Sedillo's continuing criminal behavior subsequent to his arrest, a statement of acceptance of responsibility would not

---

[8]  The Government believed that Sedillo suddenly changed his mind about entering a guilty plea after his step-brother and co-defendant, who was sentenced first, received the maximum sentence under the guidelines.  Pet. Ex. 4 at 7-8.

have made a difference in the recommendations made in the Presentence Report. <u>Tr. 1 at 14, 17-18</u>; <u>PSR (Pet. Ex. 1) at 7, ¶¶ 33-34</u>. Also, Chief Judge Conway told Petitioner at the sentencing that he would still receive a life sentence even if Sedillo had provided the statement. <u>Pet. Ex. 4 at 30</u>; <u>Pet. Ex. 2 at 7</u>.

**Ground 3**

26. Petitioner's third claim is characterized by Petitioner's counsel as a "catch-all" for various objections to the Presentence Report which defense counsel failed to make. The Government suggests that this third claim is not a separate claim comprised of new sub-claims but rather sets out the "reason why claims [one and two as set out in the petition] were not presented on appeal." Although I tend to agree with Respondent's reading of the claims in the petition, and note that Petitioner's counsel did not move to amend the petition to include these claims prior to the hearing, in the interest of justice and based on testimony related to these new claims presented at the hearing, I will address them here.

27. Petitioner's third claim contends that defense counsel failed to make the following objections to the Presentence Report:

(1) objection to the version of the offense conduct presented in the Presentence Report on the basis that was extracted from perjured testimony;

(2) objection to the cross-reference in the Presentence Report, <u>PSR ¶ 27</u>, as improper because the shooting might have been accidental; and a related objection to the characterization of facts as demonstrating an intentional shooting;

(3) objection to double-counting in the criminal history computation in the counting of a felony conviction as a true felony where defendant was given probation or a consent decree was entered.

28. I find that these objections would have been, for the most part, without merit and therefore insufficient to affect the base offense level. Moreover, Petitioner alleges ineffective assistance with the objective to change the base offense level which has at its max the sentencing term he agreed not to dispute. See ¶ 7, above.

29. *Offense conduct and perjured testimony*: Lydia Ayala told police that Sedillo said that shooting Patricia Tafoya "gave him a rush and he wished he could do it again" and that he also would have shot the passenger had his gun not jammed. PSR, ¶ 16. However, Ayala was found to have lied to the grand jury regarding DeHerrera's whereabouts at the time of the incident. PSR, ¶ 18.

30. At the plea hearing, however, Sedillo conceded to the Government's offer of evidence for trial, including that he had, at the time of the incident, the intent to "cause serious bodily harm or death to Patricia Tafoya." Pet. Ex. 2 at 12. The proffer also included the incriminating statements allegedly made by Sedillo as relayed to the police by Ayala and by Sedillo's girlfriend. Id. at 12-14. Sedillo pleaded guilty to this Count. Id. at 14, 16-18.

31. *Cross-Reference to First Degree Murder and Intentional Conduct:* Respondent correctly contends that there was sufficient evidence in the case to support a factual basis for the plea. When a defendant challenges evidentiary sufficiency with respect to a charge to which the defendant has pled guilty, "it is necessary only that the court 'make[s] such inquiry as shall satisfy it that there is a factual basis for the plea.' " United States v. Barnhardt, 93 F.3d 706, 709 (10th Cir.1996) (quoting Fed.R.Crim.P. 11(f)). "The acceptance of a guilty plea is deemed a factual finding that there is an adequate factual basis for the plea." Id. at 710 (other citations omitted).

Petitioner's claim here, premised on a lack of a factual basis, cannot succeed even if counsel should have raised the objection.

32.  *Double-counting:* Without deciding this issue on the merits, given my recommendations below, I note that a defense counsel's failure to object to a Presentence Report's arguably erroneous guideline calculations waives a defendant's right to appeal on those issues.  Thus, this issue could constitute a viable claim for ineffective assistance of counsel. Defendant's right to appeal on those issues is waived.  <u>See</u> <u>U.S. v. Saucedo</u>, 950 F.2d 508 (10th Cir. 1991).

33.  In sum, given the above findings, I find that defense counsel was not ineffective on any of the grounds presented by Petitioner.  I also find that Petitioner understood the consequences of entering into the guilty plea and that the sentencing Court had discretion to give a life sentence.  <u>Pet. Ex. 2 at 6-8</u>.  At the same time, I acknowledge that testimony at the hearing supported Petitioner's position of ineffective assistance.  In addition, defense counsel had in fact prepared formal objections to the Presentence Report, but these were never filed and would have been untimely even had they been filed.  <u>See</u> <u>Tr. I at 55-56</u>.[9]

34.  In sum, I find that the cumulative effects of the particular circumstances of this case suggest that the Court take a more cautious approach in this proceeding, with a recommendation that Petitioner be resentenced.  Although the sentence Petitioner received did not exceed the range set out in plea the agreement,[10] a reduced base offense level and criminal history level

---

[9]  The objections concerned a reduction for the statement of acceptance of responsibility and to the cross-reference made to first degree murder.  <u>Pet. Ex. 9</u>.

[10]  <u>See</u> <u>Pet. Ex. 1</u> (plea agreement at 2), where maximum penalty is imprisonment for a period of "not less than [360 months] and not more than life;. . .".

arguably would have allowed the sentencing Court some discretion, regardless of how it would be used.[11]

35.   While my recommendation to resentence Petitioner would impose additional work on the district court, I feel that it would be the more expedient approach given the likelihood of appeal and a possible remand.

*Recommendation*

36.   I recommend that Petitioner's Motion Pursuant to 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person In Federal Custody be GRANTED in that Petitioner should be resentenced; that the re-sentencing should be set so that counsel for Petitioner is given sufficient time to present to the U.S. Probation Office and to the sentencing Court any information, as well as informal and formal objections to the Presentence Report, on any matter which bears on sentencing.

37.   I also recommend that Ms. D. Penni Adrian, Esq., who represented Petitioner in this § 2255 Motion, be assigned to represent Petitioner on re-sentencing, based on her familiarity with the case.

_____
UNITED STATES MAGISTRATE JUDGE

---

[11]   In terms of sentencing error, only a significant increase in the sentence, attributable to counsel's error, constitutes prejudice.  See Allen v. U.S., 175 F.3d 560, 562 (7th Cir. 1999) (finding that a 2 offense level difference, i.e., 0- 42 months, failed to meet the constitutional standard of prejudice).